O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE: SEARCH OF HARMONY GOLD, USA, INC., 7655 Sunset Boulevard, Los Angeles, California, and the premises located at 2265 Canyonback Road, Los Angeles, California, | ) ) ) ) ) ) ) ) | Case No. CV 06-07663 DDP (JCx) **ORDER DENYING MOTION TO ENFORCE COURT ORDER** |
| Plaintiff, | ) ) | |
| v. | | [Dkt. 37] |
| , | | |
| Defendants. | | |

Presently before the court is a motion by Frank Agrama and Harmony Gold USA, Inc. to enforce an order entered by this Court on January 26, 2007 ("the 2007 Order"). Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following Order.

**I.  Background**

A.  The 2006 search

The facts of this matter are not in dispute.  In late 2006, Italian prosecutor Fabio De Pasquale sought, pursuant to a Treaty on Mutual Legal Assistance in Criminal Matters ("MLAT") between

Italy and the United States, U.S. government assistance with an Italian investigation of Movant Frank Agrama.  In compliance with the MLAT and De Pasquale's request, the FBI sought and obtained search warrants for Agrama's home and his business, Movant Harmony Gold USA, Inc.

FBI agents executed the search warrants on November 15, 2006. De Pasquale and two of his assistants were present during the searches.  The FBI ultimately seized approximately 100 boxes of documents, among other items.

Soon after, Movants filed a Motion for Return of Unlawfully Seized Property (Dkt. 1) in this Court.  Movants asserted, among other things, that the affidavits underlying the search warrants were defective, that government agents failed to follow search protocols set forth in the warrants, and that approximately half of the documents seized were privileged materials relating to an upcoming trial in Italy.

The government initially opposed the motion for return of property, relying in part upon a declaration from De Pasquale. (Dkt. 18.)  Later, however, the government filed a "Notice Regarding [] Response to Motion for Return of Property" ("the government's Notice"). (Dkt. 24.)  In that notice, the government acknowledged that agents failed to follow certain search protocols. Agents failed, for example, to sequester privileged materials and allowed De Pasquale and his team to review privileged materials. The government also withdrew De Pasquale's declaration and represented that the government "no longer relie[d] upon the assertions therein to support its Response" to Movants' motion for return of property. (Dkt. 24 at 2.)  Soon after, the government

2

withdrew its opposition to the motion. (Dkt. 25.) The government's withdrawal stated that the government "agrees that the warrants should be withdrawn, and agrees to return all materials . . . forthwith. No materials seized . . . , or copies thereof, will be transmitted to Italy." (Dkt. 25 at 2:22-26.)

This Court subsequently entered an order granting Movants' motion for return of property, the 2007 Order.[1] (Dkt. 20.) That order, summarizing the procedural history of the matter, stated that the government's Notice "brought to the Court's attention that, among other things, the government would no longer rely upon the assertions of Fabio De Pasquale." (Dkt. 20 at 2:9-11.) The court ordered the search warrants withdrawn and ordered the government (1) to return all property seized to Movants, without retaining any copies, and (2) "not to transmit to Italy or otherwise provide to Fabio De Pasquale or his prosecution team, or to any third party, any item of property seized . . . or any copy of same." (Id. at 3:10-18.)

B. The instant motion

Now, approximately twelve years later, Movants ask that this Court enforce the 2007 Order. Movants do not contend that the government failed to return all of the property seized during the November 2006 search, nor do they contend that the government transmitted any seized item or information to Italy or to any member of De Pasquale's team. Rather, this motion appears to arise

---

[1] The 2007 Order took the form of Movants' Proposed Order granting their motion for return of property, which Movants lodged in connection with that motion. The form of the order was therefore known to the government at the time it withdrew its opposition to the motion and to the relief requested therein.

3

out of investigatory activity undertaken by the Internal Revenue Service.

Some years after the events of 2006 and 2007, Agrama and his family indicated to the IRS an interest in participating in the IRS' voluntary disclosure program for offshore accounts, and made certain representations to the IRS in connection with that program. The IRS initially accepted the proffered disclosures and allowed the Agramas to participate in the voluntary disclosure program, but later came to doubt the veracity of some of the Agramas' representations. In 2013, the IRS rescinded the Agramas' acceptance into the voluntary disclosure program and began an examination of several of the Agramas' tax returns.

In 2015, the IRS issued penalty notices to Movant Frank Agrama's daughter. (Declaration of Dennis L. Perez, ¶ 9.) An attorney representing the Agrama family contacted IRS agents to ascertain the basis for the notices, and was told "that the IRS had received information from a report written by Gabriela Chersicla." (Id. ¶ 11.) The parties do not dispute that Chersicla was one of the members of De Pasquale's prosecution team, and was present during the flawed 2006 search. The government acknowledges that the IRS has possession of a report written by Chersicla in 2013. (Declaration of James Pack ¶ 9.) It appears, however, that as early as 2012, the IRS obtained information suggesting that Agrama's representations with respect to the voluntary disclosure program were not accurate.[2] (Pack Decl., ¶ 19.)

---

[2] The IRS appears to be aware of other information suggesting the same, some of it resulting from investigations and legal proceedings in Italy and Switzerland. (Pack Decl. ¶¶ 33-43). It
(continued...)

4

Approximately four years after IRS agents informed the Agramas' attorney that the IRS had received information from Chersicla, Movants filed the instant motion. Movants contend that the government, through the IRS, has violated the 2007 Order, and ask that this Court forbid the IRS from relying, for any purpose, upon any information obtained by Chersicla by any means.

II. Discussion

Much of Movants' argument is premised on the contention that in 2007, the government represented, both to Movants and to the court, that "it would not rely upon the representations of De Pasquale and his team for any purpose." (Reply at 3:4-6.) Movants read that supposed representation to apply to any government activity, including by the IRS, for any purpose, for all time. Movant's interpretation, however, is not supported in the record. The government's Notice stated, "The government . . . has withdrawn the Declaration of Fabio DePasquale . . ., and therefore no longer relies upon the assertions therein <u>to support its Response</u>." (Dkt. 20 at 2:24-27 (emphasis added).) Granted, this Court's order, recounting the procedural history of the matter, did state that the government's Notice "brought to the court's attention that . . . the government would no longer rely upon the assertions of Fabio De Pasquale." (Dkt. 20 at 2:9-11.) Read in context, however, that statement can hardly be read as a recitation of a government pledge never to consider any information obtained from De Pasquale or any

---

[2](...continued)
is unclear, however whether any of that information was derived from Chersicla's report.

5

member of his team, however and whenever obtained, for any purpose, at any time in the future.

Movants also contend that the effect of the court's 2006 order "is to prohibit the Government from relying in any way on De Pasquale or the information seized during the unlawful raid." (Motion at 11:12-13.) As an initial matter, the court notes that that position is at odds with the relief Movants seek, which includes an order stating that "the IRS can no longer rely upon the assertions of Fabio De Pasquale, including, <u>but not limited to</u>, any information or documentation obtained or used by Fabie De Pasquale and his prosecution team, including Gabriela Chersicla, <u>whether from the unlawful search and seizure that occurred in 2006 or otherwise</u>."  (Mot. at 20:10-14 (emphases added).)  Furthermore, the 2007 Order was not so broad as Movants suggest.  The only government action required by the 2007 Order was the return of all seized property to Movants, without retention of any copies or transmittal to any third party.  Movants acknowledge that the government complied with that mandate.[3]

In the alternative, Movants ask that this court "order the exclusion of the Chersicla Report . . . as a remedy for the violations of Mr. Agrama's constitutional rights in the 2006 search of his home . . . ."  (Mot. at 15:19-21).  Movants contend that the

---

[3] Movants made this acknowledgment at oral argument, notwithstanding their written contention that the government "violated the order by not only permitting Chersicla to rely on what she learned from the unlawfully obtained documents in foreign proceedings, but from relying on it itself for the purpose of a domestic tax examination."  (Reply at 5:10-13.)  It is unclear to the court how, even if the 2007 Order had required it, the government could possibly have prevented Chersicla from relying on any particular information in the course of a foreign proceeding.

6

2006 search violated Agrama's Fourth Amendment rights because the search warrants were defective and, in any event, were not adhered to. (Mot. at 15-16.)  Movants also argue that the search violated Agrama's Fifth and Sixth Amendment rights because De Pasquale accessed privileged attorney work product and attorney-client communications.  (Mot. at 18.)

The court declines to address these constitutional arguments. Although Movants ask that this Court exclude all Chersicla-derived information, it is not clear to the court what the information could be excluded from.  Movants represent that they do not seek to restrain the government from assessing or collecting taxes.  (Reply at 12:23-24.)  Rather, Movants characterize their efforts as seeking to "limit the sources on which the IRS could rely in conducting its 'information gathering.'" (Id. at 13:8-9.)  Movants do not cite, nor is the court aware of, any authority for the proposition that this Court has the power to dictate to a government agency what information it can or cannot consider in the course of an investigation.  Although constitutional claims may become relevant in some other proceeding at some later time, they are not ripe at this stage. See G. M. Leasing Corp. v. United States, 429 U.S. 338, 359 (1977) ("The suppression issue . . . obviously is premature and may be considered if and when proceedings arise in which the Government seeks to use the documents or information obtained from them."); see also Mitchell v. Riddell, 402 F.2d 842, 846 (9th Cir. 1968) ("It appears undisputed in the record that no assessment for federal income taxes has ever been levied . . . .  For such reason no 'actual controversy' exists under the record before us."); Swartz v. KPMG,

7

LLC, 401 F. Supp. 2d 1146, 1155 (W.D. Wash. 2004) (reversed in part on other grounds, Swartz v. KPMG LLP, 476 F.3d 756 (9th Cir. 2007)) ("A declaratory judgment is "not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Any assessment of penalties against the plaintiff by the IRS remains a future event which may not occur as anticipated, if at all.") (internal citations and quotations omitted); Grier v. Hilton Worldwide Inc., No. CV-14-00189-PHX-DLR, 2014 WL 11515700, at *2 (D. Ariz. July 21, 2014); In re J.C. Watson Co., No. MS-5682, 2005 WL 1079362, at *4 (D. Idaho May 5, 2005).

**III. Conclusion**

For the reasons stated above, Movants' Motion to Enforce Court Order is DENIED.

IT IS SO ORDERED.

Dated: August 25, 2020

DEAN D. PREGERSON
United States District Judge